## AJAX HAND BRAKE CO. et al. v. SUPERIOR HAND BRAKE CO.

### No. 7936.

Circuit Court of Appeals, Seventh Circuit.

Jan. 6, 1943.

Ira J. Wilson, of Chicago, Ill., and Robert S. Blair, of New York City, for appellants.

Milton T. Miller, Henry M. Huxley, and Chas. L. Byron, of Chicago, Ill., for appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

Plaintiffs, Ajax Hand Brake Company and Richard W. Burnett, charged defendant, Superior Hand Brake Company, with infringement of six patents to Burnett.[1] After a hearing the District Court dismissed the bill of complaint for want of equity, holding that all the claims in each patent were invalid for lack of invention under the prior art. Some of the contested claims were held to be infringed and others were held not to be infringed. These will be designated under the discussion of the particular patent to which they apply.

For the sake of brevity, the patents will be referred to by the last three digits of their numbers. All of the patents in suit relate to hand brakes for railway cars, or to parts thereof, and disclose mechanisms operable by hand, separate from the usual air brake applying apparatus. They are commonly used on all types of cars having comparatively high end walls. They are known to the trade as vertical brakes because the hand wheel usually used to operate them is placed in a vertical position parallel with the end wall of the car. The housing supporting the winding parts, the holding and release means, and the operating wheel, is usually mounted on one of the end walls of the car just below the roof line, at one side of the center of the end, with a narrow platform or step mounted on the car and directly below the operating wheel, on which the trainman stands, usually with one foot on the step and the other on the rung of a ladder at the end of the car.

The operating parts of these hand brake mechanisms usually consist of a housing, a brake wheel shaft, on which a hand wheel is mounted outside the housing, a small gear and a ratchet gear on the brake wheel shaft inside the housing, a larger gear wheel in mesh with the small one, a winding drum alongside the large wheel and sometimes a part of it, a shaft mounted in the housing wheel serving as an axle for the large gear wheel and the drum, a short length of chain which is wound upon the drum, and a pawl combined with some form of operating means, usually a small lever, by means of which the trainman moves the pawl into and out of engagement with the ratchet gear.

All of these patents are improvement patents, and a reading of the record convinces us that the court was right in stating that none of them were entitled to a broad construction in view of the prior art patents and the other prior art relied upon in the present record.

Patent No. '651.

This patent was applied for about a week after the application for the first patent was filed. It was the last to issue and has a file wrapper history of more than ten years. In this patent plaintiffs rely on claims 1, 3, 4, 5, 7, 8, 9, 10, 11, 14, 15, 18, 19, 21, and 23 to 29, inclusive. It covers a general combination common to all vertical brakes, and in addition is limited to particular elements. All the claims in issue, except claim 19, are limited either to the combination of a specific form of bell crank, or an oscillating member, a specific form of winding drum, or a combination of the two, the contour of the winding surface of the drum being of such form and shape that power and speed of takeup exerted upon the winding shaft is in relation to the power transmitted by the bell crank.

The bell crank has an elongated power arm which is slotted at its outer end so that when the bell crank is turned to a point where the power arm is slightly beyond the horizontal, the connection in the outer end of the bell crank slips outward, thereby materially increasing the effective length of the power arm.

Claim 19 relates to the bell crank only. Other claims are limited to a winding drum in a single plane, and also to a winding drum having an outer winding surface sufficiently long to accommodate the chain without overlap. Hence the brakeman, by spinning the brake wheel, is able to take the slack out of the foundation rigging of the car and the connections from the winding member to the brake rigging and bring the brake shoes into engagement with the outer periphery of the wheels very quickly.

The defendant's accused device consists of a spider or frame having an opening therein to receive a shaft upon which the brake wheel, a small pinion, and a ratchet are mounted. The frame also has another opening to receive one end of the hub of

[1]

| No. | Filed | Issued | No. | Filed | Issued |
|---|---|---|---|---|---|
| 1,848,822 | 5- 6-26 | 3- 8-32 | 1,911,057 | 10-31-27 | 5-23-33 |
| 1,879,974 | 6-13-28 | 9-27-32 | 1,963,115 | 5-28-28 | 6-19-34 |
| 1,911,056 | 3-25-29 | 5-23-33 | 2,054,651 | 5-14-26 | 9-15-36 |

the winding drum. A housing is adapted to be fitted over the frame and riveted thereto to form a complete enclosure for the operating parts of the brake. A brake shaft is employed which has a small gear wheel mounted thereon and also a ratchet wheel and means on the outer end thereof for mounting the hand wheel. A large gear is mounted in the housing which meshes with the small gear on the brake shaft. A chain is anchored to the hub by means of a pin, and the hub constitutes the winding drum in the housing. The gear is concentric. A pawl is provided having a tooth thereon which engages the ratchet wheel to hold the brakes in set position. It is mounted upon the crank portion of a shaft which extends through an elongated opening in the pawl, this pawl being sufficiently long to permit the crank portion of the shaft to be inserted in the pawl.

An operating lever is mounted on the outer end of the crank, which has a lost motion connection with the outer end of the crank, by means of which the pawl is brought into engagement with the ratchet wheel on the shaft and is allowed to drop out of engagement with the ratchet wheel by gravity when the lever is turned to release position. There are four lugs projecting inward from the inner face of the outer housing. Two of these form stops for the crank shaft to limit its rotation, while another receives the end of the pawl and holds it out of engagement away from the ratchet. Another lug performs the function of operating as a fulcrum if it becomes necessary to force the tooth on the pawl out of engagement with the ratchet wheel. This last lug is rarely used because the travel of the tooth is away from the ratchet, and when the crank is rotated into release position the force of the brake mechanism, which is under tension in set position of the brake, forces the pawl clear of the ratchet wheel.

The winding drum of the defendant's present type of brake consists of an elongated hub of the gear wheel and three fillets against which some of the links of the chain lie. One end link of the chain is anchored by means of a pin to the winding drum, this end link being angularly positioned at approximately 45 degrees, to the axis of the winding drum, and also to the vertical plane of the winding drum so that the chain winds around the drum with each of the links at a 45 degree angle, with the side of each link lying upon the hub. Surrounding the hub are fillets of metal cast integral with the hub and spokes, the tops of these fillets extending at a 45 degree angle both to the horizontal and vertical, these fillets being progressively longer and higher around the periphery of the drum to hold the chain at a 45 degree angle, and also to wind the chain on the drum spirally, so that a comparatively small hub will take up the necessary length of chain, with some side-lap of the length of chain. Each of the links of the chain engages upon the hub, with the alternate links lying against the fillets at a 45 degree angle, with the intermediate links also lying on the hub but at an angle of about 90 degrees to the plane of the links lying upon the fillets, or at an angle of 45 degrees, but canted in the opposite direction. The depending end of the chain is attached to a rod or other length of chain which leads to a bell crank, or a sheave attached to the lower corner of the car, by means of which the hand brake operating mechanism is connected to the brake rod leading to the foundation gear of the brake.

The accused devices are referred to by the parties as exhibits 1 and 2. Exhibit 2 is the old form of the defendant's brake, now discontinued. It is like exhibit 1 which we have described, except that the winding drum is of a different form and also the brake wheel is slightly different. The winding drum of exhibit 1 comprises a large gear wheel having a hub portion which operates as a winding surface, with an arm projecting outward therefrom, the winding surface of the drum having a channel extending circumferentially therearound to receive each alternate link of the chain, with the surface of the winding drum adapted to receive the links of the chain lying in a flat-wise direction and parallel to the axis of rotation of the drum. In this winding drum the links pass around the drum in alternate vertical and horizontal positions, with the arm positioned for a quick takeup of the slack which normally rotates approximately 180 degrees, a sufficient distance to take the normal slack out of the chain, brake rigging and the like, the winding of the chain thereof being accomplished on the drum.

In applying the claims relied upon to the defendant's structure, the parties have grouped them out of their numerical order, and we shall do the same. The first

group consists of claims 21 to 28 inclusive, and claim 21 is regarded as typical.[2]

It is clear that the claim discloses a bell crank lever with two arms, one short (referred to as the pull arm), connected to cooperate with the means leading to the brake rigging, the other longer (referred to as the power arm). It is also clear that the defendant's bell crank has two similar arms but they are of the same length. Plaintiffs contended that they were not of the same length but we think the preponderance of evidence is to the contrary; at least there is substantial evidence to support the court's finding in that respect. This one fact is sufficient, we think, to support the court's findings that this class of claims is not infringed by the accused devices. Moreover, the patent has an eccentric winding drum which is arranged with respect to the varying angular positions of the bell crank. It is clear that the accused device referred to as exhibit 1 does not disclose such a combination because it does not have an eccentric winding drum. Furthermore, claim 23 contains the same limitations as claim 21, but it provides for a bell crank to be mounted about a fixed axis. This feature is not found in either exhibit 1 or 2.

Claim 23 is limited to a winding member having an outer winding surface with a sufficient circumferential length to take up the chain at one winding. Exhibit 1 does not disclose this feature. Claim 25 is limited the same as claim 24, and it has a further limitation that its winding surface is in a single vertical plane. We are convinced that the winding surface of exhibit 1 is not in a single vertical plane, but follows a spiral or helical path. We are

further convinced that exhibit 2 when used with the bell crank does not infringe claim 25, because its bell crank arms are of equal length.

Claim 26 not only discloses the bell crank with arms of different lengths but it calls for a winding surface eccentric to the axis of the winding member. This could not be true of exhibit 1, because its winding surface is concentric with its axis of rotation.

■ It is not necessary to discuss in detail the remaining claims relied upon. It is sufficient to say that they contain limitations relating to a winding surface of substantial uniformity; a winding drum of gradually increasing radius; an eccentric winding member (the first winding being on the smaller radius); a part of the winding surface being concentric and the first winding being on the concentric portion; the leverage of the bell crank being at its maximum during the first movement of the bell crank, the chain attached to the winding member so as to wind from the minimum radius to the maximum radius, the winding surface centered in a single plane and sufficient to take up all the slack in the brake connection to which the chain is attached at a point of the minimum radius; the winding surface in a single vertical plane, the first part of which is closer to the axis of the winding member than the remainder of the winding surface, or a portion of the winding drum is closer to the axis of the winding member than the remaining portion on which the chain is first wound. It is clear to us that none of the claims just mentioned reads upon either of the accused devices. Of course, the accused devices are not the same and the point where each differs

2 21. "In hand braking apparatus for railway cars, in combination with the brake rigging, a power-transmitting train consisting of a pinion, a relatively large gear meshing with and driven from said pinion, a winding member driven from said gear, a tension member comprising a chain connected with and adapted to be wound upon said winding member and extending downwardly therefrom, and a bell crank lever mounted at the lower end of the car to swing in a vertical plane and having an outwardly extending arm connected with said tension member and having its relatively short arm connected to cooperate with means leading to the brake rigging, said train comprising means adapted to give an increasing curve of mechanical advantage, reaching substantially a maximum toward the end of the normal travel of the brake rigging, and a vertical hand wheel connected with said pinion and of a diameter and weight sufficient, upon being whirled by one hand of the brakeman, to utilize the increasing mechanical advantage and low frictional resistance of said train of elements to take up the slack and force the brake shoes against the wheels with a substantial pressure before said whirling movement stops, whereby a rapid take-up and substantial braking are quickly achieved and the parts placed in position for final application at high mechanical advantage."

from the reading of the claims is not always the same, but we feel sure that neither accused device, now under discussion, with respect to one or more of the limitations we have just mentioned, responds to any of the claims.

■ The District Court was of the opinion that claim 14, if valid, was infringed by the accused device, exhibit 2, and that claim 19, if valid, was infringed by both of the accused devices. We are unable to agree with the ruling in reference to claim 14, because the surface of the winding member of exhibit 2 is concentric with the axis of that member, and the center line of that member is not in a vertical plane. We do, however, approve that court's ruling with respect to claim 19.

■ With respect to the validity of this patent, we feel impelled to approve the District Court's ruling that the patent is invalid. All of the elements are quite old and well known in the art, and before a combination of them can justify the issuance of a patent thereon, there must be some new result obtained thereby. So far as we are able to discern, each element therein used performs precisely the same function as such element, or elements, did before they became a part of this combination. We understand that there must be more than this. In other words, there must be a cooperation of the elements which produces a new result, otherwise there is nothing but a mere aggregation. The prior patents relied upon by the defendant to support the District Court's ruling are Ackley, No. 1,002,551; Rochambeau, No. 1,052,967; Kelley, No. 486,718; Anderson, No. 1,517,692; Willoughby, No. 1,470,414; and Brewster, No. 1,513,888. Other prior art relied upon is referred to as the Peacock Brake set forth in the Railway Age Gazette of June 15, 1916.

Much of this prior art was noted by the Examiner before this patent was issued. Much of it is old and does not read precisely upon the claims here in suit, and some of it relates to times and conditions which are different from the present day, which demands greater protection of employees. This contention is worthy of note, but it is not so significant when we recall that the disclosures by Burnett were made more than sixteen years ago. It may be conceded for the purpose of argument that none of the prior art relied upon by the defendant discloses the precise thing which Burnett disclosed, nor is any used for the precise purpose, but it is apparent that it is all analogous art which shows familiarity of the public with all of the elements in this disclosure. We are not unmindful that Burnett's disclosures under this patent have produced good results, and that it has sustained considerable commercial success. However, we have failed to discern any cooperation of the old elements which he has used to produce any new result. The District Court was of this opinion and we are unable to disturb its decree in this respect.

### Patent No. '056.

The object of this patent is to provide a railway car hand brake in the operation of which the slack in the brake rigging and brake setting apparatus is quickly taken up, the brake shoes brought into contact with the car wheels, with the parts of the brake setting apparatus in positions to give substantial maximum leverage for all normal amounts of slack, while provision is made for setting the brakes even where there is an excessive amount of slack. Another object is to produce in such brake apparatus, in which the chain of the brake rigging extends around the sheave, novel means for providing connections between the brake rigging and operating mechanism on the end wall of the car.

The patent has thirteen claims, all of which are relied upon. The structure is designed to accomplish the same purposes and results when used with a sheave as when used with a bell crank. All of the claims include as a part of the combination, the essential elements common to all power hand brakes, such as the frame, wheel, brake shaft with a small pinion ratchet thereon, with some form of holding means for cooperation with the ratchet, and a winding drum which is eccentric to its axis of rotation, and which has its winding surface in a single plane. The single plane element is the feature of novelty herein. However, there is a further intimation in some of the claims that the winding surface is longer than the maximum takeup of the slack. All claims of this patent contain the limitation in reality or in substance that the winding surface is eccentric, and that the center line of that surface is in a single plane.

From what we have said in discussing patent number '651, it is clear that the winding drum of defendant's accused structure exhibit 1 is neither eccentric

nor is it in a single plane. The file wrapper of this patent discloses that the claim of this patent was allowed over Rochambeau, No. 1,052,967, and also others which show a winding drum of substantially the same degree of spiral effect as the brake in defendant's accused structure exhibit 1. The winding drum of this structure has substantially the same degree of angularity around the winding drum as Rochambeau. Hence, if the difference in this respect was sufficient to authorize the patent to Burnett over Rochambeau, by the same token it cannot be said that the accused exhibit 1 infringes Burnett.

It will be noted that in claim 1 the winding surface is limited to a section of short, substantially uniform radius on which the chain first winds, and a section of increased radius. However, the winding surface of the accused structure exhibit 2 discloses that it is the surface alongside the arm to which the chain is attached, plus the three-quarter segment of the drum, which is concentric with the axis of rotation. From this it is clear that such accused structure does not have the limitation of short, substantially uniform radius on which the chain first winds or the increased radius for the later winding.

■ .The limitations of claims 2 and 3 are substantially the same as claim 1, and we think there is no infringement of any of those claims. Claims, 4, 5, 6, 7 and 8 do not read on the patented brake when used with the bell crank, but they do so read when the brake is used with a sheave.

■■ Claim 9 is limited by the guiding means on the car. The defendant's brake, when used with a sheave, has a rod extending through a hole in the car step, but the District Court was of the opinion that this hole was so large that it could not possibly have any guiding effect on the rod, and for that reason it thought that claim 9 was not infringed. In this we think there was no error. It is conceded that claims 10, 11, 12 and 13 of this patent read on the accused exhibit 2 when used with either a sheave or a bell crank, and we. agree that those claims, if valid, are infringed by the accused structures.

■ The District Court found this patent invalid as lacking invention over Rochambeau, No. 1,052,967; Bolen, No. 1,-084,247; Kelley, No. 486,718; and Browne, No. 136,581. The substance of this invention seems to be a drum which forms the winding member for the chain, forming a part of the brake mechanism. The drum discloses an eccentric winding surface, the center line of which is in a single plane and longer than the maximum take-up of the slack in the brake rigging, that is to say, it has a section of long radius, then a section of short, uniform radius and ends with a section of long radius. In other words, it comprises an eccentric winding drum with sufficient surface to accommodate the length of chain necessary to take the slack out of the brake rigging. None of the prior art patents relied on in this case has all the limitations of the combination now before us, but they do add support to the fact that all of the elements in the Burnett patent are quite old in the art. It is quite plain that the Rochambeau patent has every limitation of claim 1, except the winding surface of the drum. It is clear that Rochambeau's winding drum is eccentric, although his chain winds around the drum in more than one turn. It is urged by defendant that if the winding drum of the accused structure, exhibit 1, is substantially in a single plane then the Rochambeau drum also must be in a single plane. We 'assume from the findings in this case that the District Court thought there was no invention in merely altering the form of the drum slightly for the purpose of having the winding take place in a single plane, and such alteration would be a mere mechanical expedient. The record in this case is not sufficient to warrant us in coming to any other conclusion.

The Bolen patent merely shows the chain winding mechanism mounted at the top end of a car. It may well be doubted whether his drum is of the same diameter as Burnett's, but it does disclose guiding means for the rod leading downward from the winding means in the form of keepers on the end wall of the car. The disclosure of this prior art patent is not especially instructive on the question before us, except as to one point. It poses the question whether invention can be said to reside in merely increasing the size of the drum. The District Court evidently thought not, and with his conclusion we agree.

The Kelley patent seems to have every limitation of claims 1 and 4 of the patent now before us, with the exception of the vertical hand wheel and an anti-friction

member near the bottom of the car. It discloses a drum with a winding surface in a single plane, the drum being formed with a section of comparatively long radius on which the chain winds, a section of short, substantially uniform radius on which the chain first winds in setting the brake, and a section of increasing radius over which the chain winds after it is wound completely around the drum with the center line in a single plane. The District Court thought that the adding of a vertical hand wheel and an anti-friction limitation to the corner of a car is not patentable over the disclosure of Kelley. We have no logical basis for arriving at any different conclusion from that of the District Court. We realize that we should use caution in overthrowing the presumption of validity arising from the issuance of the patent, but it is likewise our duty to exercise our independent judgment respecting validity even though we disagree with the Patent Office in that respect.

The Browne patent merely discloses a winding drum which is eccentric, and winds in a single plane, which is the broad idea disclosed in the patent now before us. We agree with the conclusion of the District Court that patent No. '056 lacked invention.

### Patent No. '974.

■ The principal object of this patent is to provide a simple, strong and durable mechanism for quickly, easily and conveniently setting and releasing the brakes without risk to the brakeman. The issues are validity and whether the accused device exhibit 2 infringes claims 1, 2, 3, 11, 12 and 13. Admittedly claims 1, 2, 3 and 11 read upon both of the accused structures, and the District Court correctly so ruled.

Claim 12 is limited to the pawl positioned to engage the upper portion of the ratchet, and claim 13 specifies such point of engagement at the top portion of the ratchet wheel. Neither of the accused devices engages the wheel at its top or upper portion, but on the side. From the evidence the District Court was warranted in so finding. Burnett so limited these claims and relied upon such positioning as a novel feature, and in that respect he is not entitled to a broad construction of his claims.

The District Court held that this patent was anticipated by Brenne, No. 1,570,609. That patent discloses a ratchet wheel having a pawl with a tooth on its end which engages with the ratchet wheel. The pawl is pivoted to the end of a lever and is also pivotally mounted for reciprocal movement on a pin. There is a spring which seats at one end on a flat portion of the pawl, and engages the housing at its opposite end, which forces the pawl toward the ratchet wheel. The rear face of the tooth has a heel with a beveled face adapted to engage with a corresponding beveled face on a stop which is integrally formed with the housing, and against which the tooth engages as it is moved out of engagement with the pawl. A backward thrust of the pawl keeps the stop and the rear face of the tooth in sliding engagement with each other and thus the pawl is guided out of engagement with the ratchet tooth. The pawl is loosely mounted on the end of the lever, and if the apparatus is in a vertical position, as disclosed by Brenne, there is no doubt that the beveled face of the stop and the beveled face of the heel of the tooth is kept in engagement by the weight of the pawl. This might not be true if the pawl were in a horizontal position, as in Burnett, but we are not convinced that a change of a device from a horizontal to a vertical position indicates that degree of genius which the patent laws were designed to protect.

■ Appellants urge that the lever which operates Brenne's pawl cannot be considered as an eccentric or crank. However, the lever has two centers of rotation, and in effect is the same as a crank or an eccentric. We fail to see any difference, and approve the ruling of the District Court in holding that this patent is invalid because anticipated by Brenne. Other art relied upon by the District Court consists of patents to Miller, No. 841,091; Hazeltine, No. 1,512,925; Raub, No. 455,-114; and Brewster, No. 1,513,888, and we think this art is quite pertinent.

### Patent No. '057.

■ This patent is specifically limited to a winding drum having a series of convex, peripheral winding surfaces disposed at an angle to each other and eccentric to the axis rotation of the drum. Plaintiffs do not use this specific form of drum in their commercial structure in which the winding drum consists of a series of curved surfaces, some of which have longer radii than others. Claims 4

and 5 are here relied upon. The defendant's accused structure exhibit 2 comprises an elongated arm to which the chain is attached, and three portions concentric with the axis of rotation of the drum. The surfaces of these portions support the sides of the horizontal links of the chain while the vertical links extend around the corners of these surfaces. At the trial of this case there was controverted evidence as to whether the surfaces on exhibit 2 were flat or convex. It is admitted that the convexity, if any, is very slight. Certainly it is not readily apparent to the eye. However, the District Court noted, as must we, that each of the claims is limited to the winding surfaces being eccentric to the axis of rotation and he found that in the accused structure these surfaces were concentric with the axis of rotation. Hence, he held that claims 4 and 5 were not infringed. We are unable to say that the winding surfaces are convex, but aside from this we think the winding surfaces of exhibit 2 are concentric with the axis of rotation and for that reason the conclusion of the District Court must be sustained.

■ The patent was held invalid by the District Court, in view of the patents to Dixon, No. 768,933; Taggart Reissue, No. 12,327; and Klasing, No. 1,704,438. Claims 4 and 5 are limited to the winding drum and a series of peripheral winding surfaces convex in contour and disposed at an angle to each other and eccentric to the axis of rotation of the drum. Klasing disclosed a winding drum eccentric to the axis of rotation in a single plane with their surfaces extending at an angle to each other, and Taggart disclosed a concave winding surface, and winding drums in a single plane with convex surfaces, a circular surface and a concave surface. The District Court thought that it was a mere matter of choice for Burnett to select his disclosures in this respect, and that such selection could not arise to the dignity of invention. We concur in this ruling.

### Patents Nos. '822 and '115.

Because these two patents relate to similar subject matter, the plaintiffs treat them together and we shall do the same. No. '822 relates to a hand wheel for operating the brakes, and No. '115 covers the same hand wheel in combination with other brake operating mechanism. Claims 1, 2, 3, 4 and 5 of patent No. '115 are involved. These patents disclose a brake hand wheel having the usual spokes, an inner rim extending circumferentially of the wheel and integrally formed with the spokes, the inner rim having projections which extend into the spaces between the inner and outer rims as a means of preventing the brakeman from reaching through the hand wheel to the trip lever. Claim 1 discloses a hand wheel comprising, as a unitary metallic structure, a hub, rim, spokes connecting the hub with the rim, and a circular web intersecting the spokes between the hub and rim, formed with outwardly extending projections between the spokes. The gist of this claim is the outwardly extending projections between the spokes.

The defendant's accused structures have different types of brake wheels, one of them being the ordinary S type of spoke and the other is one in which the outer rim of the spokes defines a continuous circle drawn on a comparatively short radius, with webs which are slightly curved connecting the spokes intermediate their ends. The sections of the outer rim are segments of a curve on a shorter radius than is normally employed in a brake wheel. It was demonstrated before the trial court that the distance between the outer rim and what is referred to as an outwardly extending projection between the spokes of the accused exhibit was three and one-half inches, and that that distance was the precise requirement of the standard specifications for gearing hand brakes as promulgated by the Association of American Railroads,—this for the purpose of allowing a proper gripping of the hand wheel by a brakeman using large mittens or heavy gloves. The design of the patent in this respect is to prevent a workman from putting his arm through the opening. It was demonstrated before the trial Judge that this was not true with respect to the accused devices and upon that demonstration the court held that the accused devices did not infringe.

■ Claim 12 of the patent No. '115 discloses a combination of a hand wheel and hand operated lever and contains a limitation of webs which compels a brakeman to reach over the wheel in order to manipulate the tripping lever. By the same demonstration as last above referred to, the court was of the opinion that claim 12 of this patent was not infringed. With respect to infringement of any of the

claims relied on, we think the court's ruling is correct.

 The District Court held that neither No. '822 nor No. '115 was a valid patent in view of Wrigley, No. 1,537,212; Waterbury, No. 138,968; and Timms, No. 534,353, and further that there was no invention of patent No. '15 over Brewster, No. 1,513,888.

A discussion of this prior art is unnecessary. It is sufficient to say that Wrigley made the same disclosures for the purpose of preventing a brakeman from putting his brake club through the wheel. Waterbury discloses that it was old to restrict space within a circumference, and both Timms and Brewster disclose that it is old to show a dished wheel out of the plane of the wheel. Regardless of the prior art, we think there was no inventive genius involved in these disclosures.

The judgment of the District Court is affirmed as to all six patents as to the issue of validity. With respect to the issue of infringement, the judgment is reversed as to claim 14 of patent No. '651, and affirmed as to all others.