46 CCPA

**Application of Alexander M. WRIGHT.**

**Patent Appeal No. 6448.**

United States Court of Customs and Patent Appeals.

July 10, 1959.

A. M. Prentiss, West Hartford, Conn., for appellant.

Clarence W. Moore, Washington, D. C., (D. Kreider, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and JACKSON (retired), Associate Judges.

SMITH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals which affirmed the Primary Examiner's rejection of claims 16 through 22 of the Alexander M. Wright application, serial No. 256,489, filed November 15, 1951, for "Vortex Pumps." No claims have been allowed.

The claims are intended to cover a liquid fuel supply system which consists essentially of a fuel pump driven by a variable speed drive having a driven

shaft connected with the pump and a driving shaft driven by a rotary-type engine (referred to in the claims as a "prime mover") and a control responsive to the pump discharge pressures for varying the speed of the driven shaft of the variable speed drive. The claims call for a vortex type pump as the fuel pump.

It was admitted by appellant at the argument that each element of the claimed system was separately old. It is appellant's position that while the separate elements of the system are old, the resultant combination called for by the claims is new and provides a fuel feeding system which appellant asserts is capable of operating efficiently at both minimum and maximum engine speeds to provide fuel for the engine at a discharge pressure and a volumetric rate which vary generally with the speed of the engine.

Claim 16, on which all of the other claims are dependent, recites this combination as follows:

"16. In a fuel supply system having a rotary-type prime mover with pumping means, driven by said prime mover, for supplying liquid fuel thereto, said means comprising a vortex-type fuel pump, driven by said prime mover, and having a rotary impeller with flat, straight, radial blades, so constructed and arranged as to generate in the pumped liquid fuel vortex currents which move at right angles to the plane of rotation of said impeller; first means, connecting said impeller to said prime mover, whereby said impeller is driven by, and in a selected, variable speed ratio with said prime mover; second means for applying the energy of said vortex currents to assist in driving said impeller; and third means, operatively associated with said impeller and said first means, for controlling the discharge pressure and rate of said pump, in accordance with any selected speed and discharge pressure characteristic desired."

The references relied upon by the examiner and the Board of Appeals in rejecting the claims are:

Hobbs et al.   2,400,307   May 14, 1946
Weeks        2,599,680   June 10, 1952

The examiner and the board also referred to the following patents, but did not base the rejection thereon:

Buck    2,287,021   June 23, 1942
Hobbs   2,400,306   May 14, 1946

Patent No. 2,400,307 to Hobbs et al. discloses a variable speed drive for an engine supercharger, and shows a primary air compressor, driven by an engine, which is connected, through a pair of fluid couplings, to an auxiliary air compressor, whose discharge pressure is maintained substantially constant by valves, one of which is responsive to manual movement of a throttle and to the discharge pressure of the auxiliary air compressor.

Patent No. 2,599,680 to Weeks discloses a liquid distributing system having means for obtaining a predetermined division of liquid flow through a plurality of flow passages, and shows a primary gear pump, driven by the engine, which supplies liquid, through a main conduit, to three branch conduits, in each of which a "positive liquid-displacing device," similar in structure to a rotary gear pump or meter, is located. These three liquid displacing devices are geared together and driven by the output drive shaft of a fluid coupling. The fluid in the coupling is controlled by a valve which is responsive to the pressure drop across one of the liquid displacing devices.

It is the position of both the Primary Examiner and the Board of Appeals that, while the prior patents do not disclose the vortex pump element called for in claims 16 through 22, the substitution of such a pump for the pump in the combinations shown in the prior patents is not a patentable invention.

Appellant asserts that claims 16 through 22 cover a novel and patentable combination of individually old elements.

It is this difference of opinion which presents the issue before us, i. e., does claim 16 and its dependent claims define a novel and patentable combination?

The issue presents questions of both law and fact. The law is reasonably clear:

(1) " ' The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that heretofore performed or produced by them, is not patentable invention.' " Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1940, 340 U.S. 147, 151, 71 S.Ct. 127, 130, 95 L.Ed. 162.

(2) "A combination is a composition of elements, some of which may be old and others new, or all old or all new. It is, however, the combination that is the invention, and is as much a unit in contemplation of law as a single or noncomposite instrument." 20 RCL 1125–1126.

(3) "The real question as to the validity of the patent is not one of anticipation or of prior use but of invention. The question is whether the product of the patent is a mere aggregation, in which old elements accomplish independently what they did in the prior art, or whether there is a true combination in which old elements have been combined to produce a new and useful result." Colgate-Palmolive Company v. Carter Products, 4 Cir., 1956, 230 F.2d 855, 861.

(4) "Though the court may have believed that each of the elements in the patented device was old, it does not follow that the combination was unpatentable. We need not elaborate upon the rule that a novel combination of old elements which so cooperate with each other so as to produce a new and useful result or a substantial increase in efficiency, is patentable. See Lewyt Corp. v. Health-Mor, Inc., 7 Cir., 181 F.2d 855, certiorari denied 340 U.S. 823, 71 S.Ct. 57, 95 L.Ed. 605; Blaw-Knox Co. v. I. D. Lain Co., 7 Cir., 230 F.2d 373." Weller Manufacturing Company v. Wen Products, Inc., 7 Cir., 1956, 231 F.2d 795, 798.

The facts here of record are quite meager. The examiner has cited no art showing a vortex pump. For a showing of the alleged cooperation of the claimed elements to produce a new and unobvious result, we are dependent upon the graph shown in Fig. 3 of appellant's drawings (which is here reproduced and the description of this graph in the specification.

FIG. 3

760

The specification describes the above figure as "a diagram showing the speed-discharge pressure (and rate) characteristic of my improved pump." The specification further describes the operation of the pump with reference to the diagram of Fig. 3 as follows:

"When a vortex pump, such as disclosed in my copending parent application and hereinabove, is driven directly by the engine to which the pump supplies fuel, the pressure and rate of discharge increase generally as the square of the impeller speed, as indicated by the curve o-a-b in the diagram of Fig. 3. Hence, if such a pump were designed to give at say 2,400 rpm (10 per cent of its selected maximum speed of 24,000 rpm) a selected discharge pressure of say 175 pounds per square inch (psi), as indicated by the point a, corresponding to 17.5 per cent of its selected maximum discharge pressure of 1,000 psi at 24,000 rpm, then said pump would develop its maximum selected discharge pressure of 1,000 psi, when its impeller speed was only about 25 per cent of its selected maximum speed, as indicated by the point b. At the same time, when the impeller of said pump attained its selected maximum speed of 24,000 rpm, its discharge pressure would increase to about 17,500 psi, or one hundred times its selected 10 per cent speed value.

"Conversely, if the said directly driven pump were designed to give a discharge pressure of 1,000 psi at 100 per cent of its selected maximum speed (24,000 rpm), then its discharge pressure would decrease with impeller speed, as shown by curve d-c-o, so that the discharge pressure would fall to 175 psi, when the impeller speed was 42 per cent of the selected maximum speed (as indicated by point e).

"In view of the foregoing, it is clear that a single stage vortex pump, as described hereinabove is incapable of giving a speed-dis-charge pressure (and rate) characteristic, as indicated by the curve o-a-c-d in Fig. 3, which is required for a fuel boost pump."

In studying the above graph and the specification, we note that appellant, in the above quoted portion of his specification, refers to the "curve d-c-o." We have been unable to understand how such a curve supports appellant's position. In view of appellant's reference in the same sentence to the "point e" and appellant's brief, we have assumed that appellant must have intended to refer to the curve d-e-o, shown in dotted line on the Fig. 3 graph.

Appellant argues that this graph shows that fuel pumping means constructed according to the claimed invention gives results which are not achieved by the use of a vortex type pump directly driven by the engine without the variable speed drive and control unit. The Patent Office has not disputed this point.

Our consideration of this case would have been facilitated had the specification more clearly indicated how the claimed construction provides a pump having the operating characteristics shown by the curve o-a-c-d in the Fig. 3 graph. The doubts which we have had on this point have been resolved in favor of appellant's position since the examiner has not questioned either the accuracy of the graph nor appellant's conclusions as to the operating characteristics of the claimed pump.

However, neither this graph nor any other evidence in the record gives us any basis for a direct comparison between the devices of the prior art and the combination claimed by appellant. Since no vortex type pump is shown in any of the references of record, we are left to infer that no prior art pumps have the operating characteristics of appellant's claimed combination.

The position of the Primary Examiner and the Board of Appeals may be summarized as follows: The prior patents show "pumps" driven through a fluid coupling and controlled according to desired operating conditions; appellant's

claims cover no more than the substitution of a known vortex pump for the pumps shown in such prior patents; there is no new or unexpected result from this substitution; all of the parts perform the same functions as they have in the past; therefore, appellant's claims cover a combination of elements which, though it may be novel, is lacking in patentability.

In B. G. Corporation v. Walter Kidde & Co., Inc., 2 Cir., 79 F.2d 20, 22, Judge Learned Hand in disposing of a similar argument there advanced in an infringement action, used language which we think is applicable here:

"All machines are made up of the same elements; rods, pawls, pitmans, journals, toggles, gears, cams, and the like, all acting their parts as they always do and always must. * * * But the elements are capable of an infinity of permutations, and the selection of that group which proves serviceable to a given need may require a high degree of originality. It is that act of selection which is the invention; and it must be beyond the capacity of commonplace imagination."

This court and the Patent Office tribunals are handicapped in deciding a case such as the present one by the incomplete nature of the record before them. The tests announced by the courts to determine patentability of combinations require an evaluation of numerous factual matters on which no evidence is here presented. We have in this record the self-serving declarations of appellant as the only evidence on such important issues as the continued existence of a problem in the art and the solution of that problem by the claimed combination of individually old elements. Likewise, we have only the self-serving declarations of appellant that his selection and combination of elements, when appraised in the light of the new results said to be achieved by it, produces a result which is more than the expected sum of the individual functions of the old elements, when considered separately.

Where the prior patents do not show the claimed combination and there is no evidence before us to challenge the position taken by an applicant, it is our opinion that an applicant should not be denied his patent on the basis of factual speculation either by this court or by the Patent Office tribunals. We base this on the proposition that an applicant must be assumed to know and understand the nature and truth of the statements made in his specification.

When we turn to the specification here before us, we find that appellant asserts serious problems in the operation of *vortex* pumps in aircraft fuel systems which his invention has satisfactorily solved. We do not find any teaching in the prior art of the specific combination claimed.

We agree with the examiner and the Board of Appeals that the prior art shows the same *general* combination of elements as that covered in the claims before us: i. e.,

A. a rotary-type prime mover,

B. pumping means to be driven by the prime mover and to supply fuel to the prime mover,

C. drive means between the pump and prime mover, and

D. means cooperating with the drive means to vary the ratio of the speed of the pump to the speed of the prime mover.

It is appellant's position that the combination covered in claims 16 through 22 also includes the structural elements of the vortex pump which give the results shown in the Fig. 3 graph. We do not find these elements of a vortex pump in any of the combinations shown in the prior patents of record. We think that the invention in this case resides in appellant's particular selection of elements making up the new combination covered in claims 16 through 22. It is our opinion that the prior patents cited by the examiner do not show the combination covered in claims 16 through 22.

There remains for consideration the question of whether or not this selection and combination of old elements was ob-

vious at the time the invention was made to a person having ordinary skills in this art. The combination of the claimed vortex pump, variable speed drive and the control actuated by the discharge pressure of the pump, appears to give the new and, on the record before us, unobvious result asserted by appellant, i. e., pumping means in which the discharge pressure and volumetric rate of feed of the liquid fuel is controlled according to the preselected speed and discharge pressure characteristics required to meet the operating requirements of the engine.

Appellant's Fig. 3 graph indicates that this result is not achieved by a vortex type pump directly driven at engine speeds. There is no showing that it would be achieved by the devices of the prior art unless they are modified as taught by appellant. The results which appellant attributes to his claimed combination of elements suggest to us that his selection and combination of the various elements to solve a theretofore unsolved problem in this art was not obvious to one having the ordinary skills in this art.

Since, on the record before us, the combination claimed appears to have properties which are separate from and in addition to the properties of the elements taken separately, we hold that claims 16 through 22 cover a new combination of individually old elements. This combination is not shown in the prior references of record. We believe that the claimed combination was not obvious at the time of appellant's invention to one having the ordinary skills in this art.

Pursuant to a motion filed by the Solicitor for the Patent Office, copies of the patents to Buck, No. 2,287,021, and Hobbs, No. 2,400,306, have been included in the record and the decision as to the taxing of costs for such inclusion has been postponed until this time. The patents in question were discussed in the examiner's answer to the appeal to the board and were therefore properly made a part of the instant record. Accordingly, the costs incident to including them will be taxed against appellant.

The decision of the Board of Appeals is reversed.

Reversed.

WORLEY, C. J., did not participate because of illness.

MARTIN, J., did not participate in decision.

RICH, Judge (concurring).

I want to mention certain factors in this case which influence me to agree with the conclusion reached in Judge SMITH's opinion.

Not only do the claims on appeal specify a vortex-type fuel pump as part of the claimed pumping means, but they call for a specific type of vortex pump described in the specification and containing what claim 16 refers to as "second means for applying the energy of said vortex currents to assist in driving said impeller."

The record gives us no information about the place in the art of the kind of vortex pump specified in the claim. Apparently it is the "high efficiency vortex pump (such as that disclosed in my co-pending parent application)" to which the specification refers, the present application being stated to be a continuation in part of application serial No. 254,022, filed October 31, 1951. One might guess that applicant has invented a new vortex pump containing the "second means" of claim 16, which is described in the application before us as a turbine rotor 16 which is actuated by energy from the vortex currents (those moving at right angles to the plane of rotation of the impeller of the pump). This rotor is mounted on the impeller shaft and any energy it absorbs thus assists in driving the impeller. This kind of vortex pump appears to be *disclosed* in the parent application but whether it is claimed therein we have no way of knowing. In any case, it is claimed here in combination with a variable speed drive and means for varying the speed of the drive in accordance with variations in the pump discharge pressure. The references do not show the combination. Though the

Hobbs et al. patent shows a kind of pump, the air compressor of a supercharger, in combination with a fluid coupling and pressure responsive control means, this reference does not suggest the applicability of the control to a vortex pump of any kind.

No reference shows a vortex pump, nor is appellant's parent application before us or in any way relied on in the rejection. It may well be that appellant's high efficiency vortex pump in combination with the claimed control system produces unobvious results in an unobvious way.

In simplifying appellant's combination to the point where one of the elements is merely a pump, the examiner was setting up a nonexistent situation for the sake of argument. Appellant insisted that his claim called not for a single element, a pump, but set forth four different elements in the combination, called F, G, g, and I. The board said:

> "We have considered the examiner's position in this respect and agree with him that elements F, G, g, and I of appellant's combination are in reality merely the pump means of the references *as far as the combination claimed is concerned*. (My emphasis.)"

This was error since it wrongly assumes that the pump element of the claims read on any pump, which is not the case. Claim 16 specifies

> * * * a vortex-type fuel pump * * * having a rotary impeller with flat, straight, radial blades, so constructed and arranged as to generate in the pumped liquid fuel vortex currents which move at right angles to the plane of rotation of said impeller * * * second means for applying the energy of said vortex currents to assist in driving said impeller.

All of this limits the pump element in the claim. I agree with the board that elements F, G, g, and I are "merely the pump means," but they are appellant's pump means and not at all the pump means described in the references. So it

comes down to the question of the patentability of the combination of appellant's pump, as defined in the claims, with the other elements in the claimed combination. I think the references relied on fall far short of suggesting it and therefore that it is patentable.